**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**
**CEDAR RAPIDS DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | | |
| Plaintiff, | No. 20-CR-39-CJW-MAR | |
| vs. | **ORDER** | |
| ANTHONY REDMAN, | | |
| Defendant. | | |

_____

**TABLE OF CONTENTS**

I.    INTRODUCTION ............................................................................ 2

II.   STANDARD OF REVIEW.............................................................. 2

III.  FACTUAL BACKGROUND ........................................................... 6

IV.   ANALYSIS...................................................................................... 9

      A.    Defendant's General Objection to All Factual Findings ....................10

      B.    Defendant's Objection to Finding Officer Smith was a Peace Officer ....11

      C.    Officer Martin's Arrival on Scene ...............................................14

      D.    The Lighting in the Motel 6 Parking Lot .....................................15

      E.    Odor of Marijuana ....................................................................16

      F.    Whether Open Bottles of Beer Supported Reasonable Suspicion...........18

G.      Firearms or Fireworks; That is the Question..................................19

H.      Defendant's Admissions .....................................................20

V.      CONCLUSION..............................................................................22

## I.      INTRODUCTION

This case is before the Court on defendant's Objections (Doc. 37) to the Report and Recommendation ("R&R") (Doc. 36) of the Honorable Mark A. Roberts, United States Magistrate Judge,[1] in which Judge Roberts recommended the Court deny defendant's Motion to Suppress (Docs. 27, 34). For the following reasons, the Court **overrules defendant's objections** and **denies** defendant's Motion to Suppress.

## II.      STANDARD OF REVIEW

The Court reviews Judge Roberts' R&R under the statutory standards found in Title 28, United States Code, Section 636(b)(1):

> A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

*See also* FED. R. CIV. P. 72(b) (stating identical requirements). While examining these statutory standards, the United States Supreme Court explained:

---

[1] In his Objection to the Report and Recommendation, defendant repeatedly refers to the Honorable Mark A. Roberts by the title "magistrate." (Docs. 37, at 2, 6, 12, 13, 14 & 15). The Court takes this opportunity to remind counsel that the proper title is United States Magistrate Judge. *See* Judicial Improvements Act of 1990, Pub. L. No. 101-650, 104 Stat. 5089 (1990). This title has been in use for three decades now and the Court expects counsel to treat judicial officers with respect by using their proper title. *See* Ruth Dapper, *A Judge by Any Other Name? Mistitling of the United States Magistrate Judge*, 9 FED. CTS. L. REV. 1, 17 (Fall 2015). Thus, counsel should use "magistrate judge" or "judge" rather than simply "magistrate."

2

> Any party that desires plenary consideration by the Article III judge of any issue need only ask. Moreover, while the statute does not require the judge to review an issue de novo if no objections are filed, it does not preclude further review by the district judge, sua sponte or at the request of a party, under a de novo or any other standard.

*Thomas v. Arn*, 474 U.S. 140, 154 (1985). Thus, a district court may review de novo any issue in a magistrate judge's report and recommendation at any time. *Id.* If a party files an objection to the magistrate judge's report and recommendation, the district court must review the objected-to portions de novo. 28 U.S.C. § 636(b)(1)(C). In the absence of an objection, the district court is not required "to give any more consideration to the magistrate [judge]'s report than the court considers appropriate." *Thomas*, 474 U.S. at 150.

De novo review is non-deferential and generally allows a reviewing court to make an "independent review" of the entire matter. *Salve Regina Coll. v. Russell*, 499 U.S. 225, 238 (1991); *see also Doe v. Chao*, 540 U.S. 614, 620–19 (2004) (noting de novo review is "distinct from any form of deferential review"). The de novo review of a magistrate judge's report and recommendation, however, only means a district court "'give[s] fresh consideration to those issues to which specific objection has been made.'" *United States v. Raddatz*, 447 U.S. 667, 675 (1980) (quoting H.R. Rep. No. 94–1609, at 3, reprinted in 1976 U.S.C.C.A.N. 6162, 6163 (discussing how certain amendments affect Section 636(b))). Thus, although de novo review generally entails review of an entire matter, in the context of Section 636 a district court's required de novo review is limited to "de novo determination[s]" of only "those portions" or "specified proposed findings" to which objections have been made. 28 U.S.C. § 636(b)(1)(C).

Consequently, the Eighth Circuit Court of Appeals has indicated de novo review would only be required if objections were "specific enough to trigger de novo review." *Branch v. Martin*, 886 F.2d 1043, 1046 (8th Cir. 1989). Despite this "specificity"

3

requirement to trigger de novo review, the Eighth Circuit Court of Appeals has "emphasized the necessity . . . of retention by the district court of substantial control over the ultimate disposition of matters referred to a magistrate [judge]." *Belk v. Purkett*, 15 F.3d 803, 815 (8th Cir. 1994). As a result, the Eighth Circuit Court of Appeals has concluded that general objections require "full de novo review" if the record is concise. *Id.* Even if the reviewing court must construe objections liberally to require de novo review, it is clear to this Court that there is a distinction between making an objection and making no objection at all. *See Coop. Fin. Ass'n, Inc. v. Garst*, 917 F. Supp. 1356, 1373 (N.D. Iowa 1996).

In the absence of any objection, the Eighth Circuit Court of Appeals has indicated a district court should review a magistrate judge's report and recommendation under a clearly erroneous standard of review. *See Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996); *see also Taylor v. Farrier*, 910 F.2d 518, 520 (8th Cir. 1990) (noting the advisory committee's note to Federal Rule of Civil Procedure 72(b) indicates "when no timely objection is filed the court need only satisfy itself that there is no clear error on the face of the record"); *Branch*, 886 F.2d at 1046 (contrasting de novo review with "clearly erroneous standard" of review, and recognizing de novo review was required because objections were filed).

The Court is unaware of any case that has described the clearly erroneous standard of review in the context of a district court's review of a magistrate judge's report and recommendation to which no objection has been filed. In other contexts, however, the Supreme Court has stated the "foremost" principle under this standard of review "is that '[a] finding is "clearly erroneous" when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Anderson v. City of Bessemer City*, 470 U.S. 564, 573–74 (1985) (citation omitted). Thus, the clearly erroneous standard of review is

deferential, *see Dixon v. Crete Med. Clinic, P.C.*, 498 F.3d 837, 847 (8th Cir. 2007), but a district court may still reject the magistrate judge's report and recommendation when the district court is "left with a definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948).

Even though some "lesser review" than de novo is not "positively require[d]" by statute, *Thomas*, 474 U.S. at 150, Eighth Circuit precedent leads this Court to believe that a clearly erroneous standard of review should generally be used as the baseline standard to review all findings in a magistrate judge's report and recommendation that are not objected to or when the parties fail to file any timely objections, *see Grinder*, 73 F.3d at 795; *Taylor*, 910 F.2d at 520; *Branch*, 886 F.2d at 1046; *see also* FED. R. CIV. P. 72(b) advisory committee's note ("When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."). In the context of the review of a magistrate judge's report and recommendation, the Court believes one further caveat is necessary: a district court always remains free to render its own decision under de novo review, regardless of whether it feels a mistake has been committed. *See Thomas*, 474 U.S. at 153–54. Thus, although a clearly erroneous standard of review is deferential and the minimum standard appropriate in this context, it is not mandatory, and the district court may choose to apply a less deferential standard.

5

### III.  FACTUAL BACKGROUND[2]

Judge Roberts found the following facts after an evidentiary hearing in which Officers Mark Smith and Matthew Martin testified:

> On November 26, 2019, at approximately 12:44 AM, Officer Mark Smith received a high priority call to the Motel 6 at 3325 Southgate Court Southwest, Cedar Rapids, Iowa.  (Smith Hr'g Test.)  The call was placed by a Motel 6 front desk employee who reported, "We just had shots ring out at the property . . . about five seconds ago." (Gov. Ex. 1 at 00:03-00:11.)  The employee described it as "a bunch of shots" that occurred "on the outside" of the building, towards the "backside."  (*Id.* at 00:33-00:40.)  The employee eventually estimated that "at least 12 shots just rang out." (*Id.* at 00:50- 00:53.)

> Officer Smith is very familiar with the Motel 6 area and describes it as "a high- risk area" where he has made multiple arrests in the past.  (Smith Hr'g Test.)  Officer Smith described the area as follows:

> That hotel is known for a lot of people like on probation/parole, that are wanted or absconded from supervision go there and stay there, a lot of times they pay cash, use different names. I've arrested multiple people out of that hotel that have been on the run in the past.
> (*Id.*)

> Officer Smith was in the area when the call about shots fired at the Motel 6 went out, so he arrived at the scene around 12:47 AM.  (*Id.*)  Officer Smith was driving an unmarked patrol car and in full uniform at that time.  (*Id.*)  As Officer Smith was arriving at the scene, he met with an employee who told him that "he heard the shots fired on the north side of the building."  (*Id.*)  Officer Smith then parked on the northwest corner of the building and exited his vehicle.  (*Id.*)  At no point did Officer Smith activate his lights or siren.  (*Id.*)  Upon exiting his vehicle, Officer Smith

---

[2] After reviewing the Hearing Transcript (Doc. 38), the recording of the 9-1-1 call (Exhibit 1), the video from Officer Martin's body camera (Exhibit 2), and the aerial photograph of the motel (Exhibit 3), the Court finds that Judge Roberts accurately and thoroughly set forth the relevant facts in the Report and Recommendation.  The Court will, therefore, only briefly summarize the facts here.  When relevant, the Court relies on and discusses additional facts in conjunction with its legal analysis.  The Court has omitted some of Judge Roberts' footnotes when they did not contain facts, but retained the ones that did.  When Judge Roberts directly quotes one of the witnesses, the Court has supplemented his citations to the rough draft of the hearing transcript with citations to the final transcript filed at Document 38 in the Court's file.

saw one vehicle parked and running with two individuals sitting in the front seat. (*Id.*) He saw no one else outside the motel. (*Id.*) Officer Smith then walked up to the vehicle to ask the individuals questions about the suspected gunfire. (*Id.*) At this time, Officer Smith was alone and in a dark area illuminated only by a few parking lot lights. (*Id.*) Officer Smith approached the driver's side window with his handgun holstered and asked the driver to roll his window down. (*Id.*) The driver complied and upon rolling the window down, Officer Smith noted the immediate smell of marijuana[3] and could see the driver and Defendant who was the front passenger. (*Id.*) Both held open bottles of beer while the vehicle was running. (*Id.*) Officer Smith then asked the two individuals about the shots fired in the area, and after first denying hearing anything, Defendant suggested that it might have been fireworks. (*Id.*)

Officer Smith asked the driver and Defendant for identification. (*Id.*) The driver complied, but Defendant refused. (*Id.*) Defendant then said he was not being detained and Officer Smith replied by asking him to stay seated in the vehicle. (*Id.*) Officer Smith then requested backup as Defendant was exiting the vehicle, contrary to the request he stay seated. (*Id.*)

Officer Martin arrived at the scene at the time Defendant was exiting the vehicle and asked Defendant how he was doing. (Gov. Ex. 2 at 00:30-00:33; Smith Hr'g Test.) Officer Smith informed Officer Martin that Defendant had refused to give him his ID at which point Defendant told Officer Martin he was not under arrest and that he stepped outside to have a drink. (*Id.* at 00:33-00:40; Smith Hr'g Test.) Officer Smith then told Officer Martin that he told Defendant "to stay here." (*Id.* at 00:53-00:56; Smith Hr'g Test.) Defendant walked toward a motel room at which point Officer Martin physically prevented Defendant from entering the motel room. (Smith Hr'g Test.; Martin Hr'g Test.)

---

[3] Officer Smith is trained in detecting the odor of marijuana:

Q. Have you had any training or experience in recognizing the odor of marijuana?

A. Yeah, we've had different trainings, and at the academy, we've had controlled burns and stuff like that.

Q. And then have you in the course of your job had experience in the detection of marijuana and then recovering marijuana from people in vehicles and things like that?

A. Yeah, I've . . . came across it quite a few times.

(Smith Hr'g Test. [Doc. 38, at 17]).

7

Officer Martin is also familiar with the Motel 6 area. (Martin Hr'g Test.) Officer Martin described the motel as follows:

> Prior law enforcement exposure to Motel 6 on Southgate has been involving a number of calls for service, some of which are high priority calls for service, meaning individuals have been seriously injured or what is considered part 1 crime has taken place at that location. . . . [The Motel 6] is a transient location that typically has a lot of criminal activity and quality issues that create issues for public safety.

(*Id.* [Doc. 38, at 40-41]) Officer Martin arrived at the scene minutes after receiving the call that Officer Smith needed assistance at the Motel 6. (*Id.*) Officer Martin had also encountered an Uber driver at the Motel 6 who informed Officer Martin that he believed the suspected shots were actually fireworks. (*Id.*) Upon arriving, Officer Martin saw Defendant get out of an unregistered vehicle with no license plates. (*Id.*) Officer Martin confirmed that Officer Smith was

> informing me that he gave a lawful order for [Defendant] to stay in the vehicle and now he's removing himself from the vehicle and trying to go into a room that I have no . . . as far as I'm concerned is an unknown so it could be dangerous, . . . my safety . . . and again, safety is a huge issue here for me, so I'm going to follow him.

(*Id.* [Doc. 38, at 44]) Officer Martin then stated he

> was trying to establish communication or at least draw [Defendant's] attention back to conversation because of the nature of the call and why we're there, and I also can see that he does have a drink in his hand and that, I'm making my pass of the vehicle, that there's apparent violations taking place that could need to be exhausted.

(*Id.* [Doc. 38, at 45]) After Defendant did not respond to any of Officer Martin's requests, Officer Martin followed Defendant to the motel room door and restrained him from entering. (*Id.*)

After taking Defendant to the ground and handcuffing him, Officer Martin began to conduct an inventory search of Defendant. (*Id.*) Officer Martin stated that as part of the search, he "wanted to know why [Defendant] was getting out of the vehicle and distancing himself kind of for my safety." (*Id.* [Doc. 38, at 49]) Officer Martin asked why Defendant was so adamant about entering the hotel room. (Gov. Ex. 2 at 3:00-3:10.) Defendant replied that he had grabbed the wrong coat. (*Id.*) As Officer

8

Martin was searching Defendant's coat pocket, he asked Defendant if he was worried about what he was going to find in his pocket. (*Id.* at 4:00-4:10.) Defendant replied that he had something in his other coat pocket at which point Officer Martin located a loaded firearm. (*Id.*; Martin Hr'g Test.) The driver of the vehicle eventually consented to a search of his vehicle. "Narcotics-related items" were recovered during the search of the vehicle, including a "pill bottle with loose like marijuana in it, often referred to as shake." (Martin Hr'g Test. [Doc. 38, at 50])

## *IV. ANALYSIS*

In his Motion to Suppress, defendant argues that: (1) the seizure and subsequent search of defendant was unlawful; (2) the officers lacked probable cause to detain and search defendant; and (3) the officers lacked reasonable suspicion to detain and search defendant. (Doc. 27-1. Defendant sought suppression of evidence including the firearm officers found on defendant along with statements he made about grabbing the wrong coat and being "worried about" what was in a pocket of the coat. (Doc. 36, at 6). Judge Roberts found that the officers' encounter with defendant began as a consensual encounter. (*Id.*, at 7-10). Judge Roberts then found that Officer Smith had reasonable suspicion for an investigative stop when he smelled the odor of marijuana and saw open beer containers in a running vehicle. (*Id.*, at 10-14). Next, Judge Roberts found that Officer Martin's seizure of defendant was still part of a lawful investigative stop. (*Id.*, at 14-17). Last, Judge Roberts found there was no Fifth Amendment violation and, even if there was, the firearm would not be subject to suppression. (*Id.*, at 17-20).

Defendant objects to Judge Roberts' R&R in several respects. First, defendant objects to Judge Roberts' "factual findings in 'II. FINDINGS OF FACT.'" (Doc. 37, at 4). Defendant does not identify which facts in this section he asserts Judge Roberts incorrectly found; rather, it appears defendant is simply objecting to every fact that Judge Roberts found. Defendant also makes more precise objections to Judge Roberts' findings that: (1) Officer Smith is a peace officer or law enforcement officer; (2) "but for Parole

Officer Smith, Sergeant Martin would not have been present"; (3) the motel parking lot was "'a dark area illuminated only by a few parking lot lights'"; (4) there was an odor of marijuana emanating from the vehicle; (5) "'open bottles of beer' are sufficient reasonable suspicion to warrant further investigative stop and a concern of an 'impaired driver' can transpose to a passenger in a vehicle"; (6) "Parole Officer Smith was aware of the possibility of fireworks as the source of the noise prior to encountering the Defendant, negating the necessity of a physical restraint"; and, (7) "Defendant did not make any admission to a firearm in his coat." (Doc. 37 at 37).[4] Defendant also objects "to the overarching conclusion and recommendation that Parole Officer Smith had reasonable suspicion based upon an odor of marijuana and open containers, and that "'Evidence of the firearm evidence is admissible even if there was a *Miranda* violation and that the Motion should be denied." (*Id.*, at 4).[5]

The Court will first address defendant's general objection to Judge Roberts' factual findings. The Court will then address each of defendant's specific objections to Judge Roberts' R&R.

### A.    *Defendant's General Objection to All Factual Findings*

Defendant's objection to Judge Roberts' factual findings *in toto* are too vague and imprecise to warrant the Court's review. The Federal Rules require a district court judge to address only specific objections to a magistrate judge's report and recommendation. *See* FED. R. CIV. P. 72 (requiring the court to review de novo any portions of the report and recommendation to which a specific written objection has been made). Appellate

---

[4] In his objections defendant appears to shift in the last two points from reciting Judge Roberts' findings to which he objects to making affirmative arguments of what findings he believes Judge Roberts should have made.

[5] The Court notes that defendant's last objection is missing a closing quotation mark; presumably it should have followed the word "violation."

courts have affirmed district courts' denial of de novo review when a party's objections lack specificity. *See, e .g.*, *United States v. Prather*, 79 F. App'x 790, 792 (6th Cir. 2003); *Mario v. P & C Food Markets, Inc.*, 313 F.3d 758, 766 (2d Cir. 2002); *see also Velez–Padro v. Thermo King De Puerto Rico, Inc.*, 465 F.3d 31, 32 (1st Cir. 2006) (stating that "[c]onclusory objections that do not direct the reviewing court to the issues in controversy do not comply"); *Thompson v. Nix*, 897 F.2d 356, 357–58 (8th Cir. 1990) (reminding parties that "objections must be timely and specific to trigger de novo review by the District Court of any portion of the magistrate's report and recommendation.").

Nevertheless, the Court has reviewed the entirety of Judge Roberts' factual findings and has conducted a de novo review of the record, including the transcript from the suppression hearing and all the exhibits. The Court finds the record supports Judge Roberts' factual findings.

Thus, the Court overrules defendant's objection to all of Judge Roberts' factual findings.

### B.    *Defendant's Objection to Finding Officer Smith was a Peace Officer*

Defendant objects to Judge Roberts' finding that Officer Smith was a peace officer with authority to stop and seize defendant. (Doc. 37, at 4-8). Judge Roberts never actually made this explicit finding because defendant did not raise this issue in his initial brief (Doc. 27) or in his supplemental brief (Doc. 34). Although defendant questioned Officer Smith to some degree about his authority (Doc. 38, at 25-27) and introduced copies of the Sixth District Department of Correctional Services Policy on Peace Officer Status (Exhibit A) and Reciprocity with Law Enforcement Agencies (Exhibit B), defendant did not make an argument at the hearing (Doc. 38) that the evidence is subject to suppression because Officer Smith acted outside his lawful authority. Defendant raises this issue and cites Iowa Code provisions for the first time in his objections to Judge Roberts' R&R.

11

By failing to raise this legal challenge during the suppression hearing or even afterwards when Judge Roberts granted the parties an opportunity to file supplemental briefs, defendant has waived this argument. *See, e.g.*, *United States v. Frazier*, 280 F.3d 835, 845 (8th Cir. 2002) (finding that defendant's assertion of a suppression issue was not timely raised when evidence supporting the issue was first introduced in objections to a report and recommendation); *United States v. Chavez Loya*, 528 F.3d 546, 555 (8th Cir. 2008) (finding district court did not abuse its discretion in refusing to address a Fourth Amendment challenge raised for the first time in objections to a magistrate judge's report and recommendation); *United States v. Norey*, Case No. 6:19-03022-CR-RK, 2020 WL 1330439, at *5 (W.D. Mo. Mar. 23, 2020) (finding suppression argument waived because defendant raised it for the first time in objections to a magistrate judge's report and recommendation); *United States v. Arreola*, Crim. No. 19-10 (DWF/BRT), 2019 WL 2337450, at *1 (D. Minn. June 3, 2019) (holding that defendant waived an issue by raising it for the first time in his objection to a report and recommendation); *United States v. Green*, Case No. 4:17-00282-CR-RK, 2019 WL 2085434, at *1 n.1 (W.D. Mo. May 13, 2019) (refusing to address as untimely issues raised for the first time in an objection to a magistrate judge's report and recommendation); *United States v. Simeon*, 115 F. Supp.3d 981, 996 (N.D. Iowa 2015) ("Federal courts have repeatedly held that while the Magistrate Judge Act, 28 U.S.C. § 631 et seq., permits *de novo* review by the district court if timely objections are filed, absent compelling reasons, it does not allow parties to raise new arguments or issues before the district court that were not presented to the magistrate [judge]" and citing authority); *United States v. Nguyen*, Cr. No. 09-172, 2010 WL 5146414, at *2 (D. Minn. Dec. 13, 2010) ("There is no indication that [the defendant] raised this issue during the suppression hearing before the Magistrate Judge. The Court concludes that Defendant has waived this issue by raising it, for the first time, in his objection to the Report and Recommendation."); *United States v. Rodriguez-Solis*,

No. 8:05CR199, 2006 WL 680885, at *3 (D. Neb. Mar. 10, 2006) (finding the defendant waived a *Miranda* violation claim because he raised it for the first time in objections to a magistrate judge's report and recommendation).

Regardless, the Court finds defendant's argument lacks merit for two reasons. First, defendant cites no authority for the proposition that a court should suppress evidence otherwise lawfully seized if a government official acted without express statutory authority to engage in an investigatory stop. In fact, there appears to be a split of authority on this issue. *Compare United States v. Ryan*, 731 F.3d 66, 70 (1st Cir. 2013) (finding suppression inappropriate even though park ranger exceeded statutory authority to arrest the defendant); *Street v. Surdyka*, 492 F.2d 368, 371 (4th Cir. 1974) (declining to suppress evidence because "[t]here is significant distinction between police action which is unlawful because violative of constitutional provisions and police action which merely fails to accord with statute, rule or some other nonconstitutional mandate"); *United States v. Jones*, 185 F.3d 459, 463 (5th Cir. 1999) (holding that the relevant question when considering suppression of evidence is whether officials violated the Fourth Amendment, and concluding that state law deficiencies in arrest were irrelevant); *and United States v. Bell*, 54 F.3d 502, 504 (8th Cir. 1995) (stating "we do not think Fourth Amendment analysis requires reference to an arrest's legality under state law"); *with Malone v. County of Suffolk*, 968 F.2d 1480, 1482–83 (2nd Cir. 1992) (concluding whether officers have valid authority to arrest pursuant to state law affects the constitutionality of the arrest); *Ross v. Neff*, 905 F.2d 1349, 1354 (10th Cir. 1990) (stating "warrantless arrest executed outside of the arresting officer's jurisdiction is analogous to a warrantless arrest without probable cause" which is "presumptively unreasonable"); and *United States v. Foster*, 566 F. Supp. 1403, 1411–12 (D.D.C.1983) (stating "concept of reasonableness embodied in the Fourth Amendment logically presupposes an exercise of lawful authority by a police officer"). Notably, however, the

13

law in the Eighth Circuit Court of Appeals, which is binding on this Court, is that an officer's violation of state policies or laws does not render the officer's conduct a violation of the Constitution necessitating suppression of the evidence. *Bell*, 54 F.3d at 504. Similarly, this Court has held that suppression of evidence is not appropriate when an Immigration Officer acted outside of his lawful arrest authority. *See United States v. Bautista-Ramos*, No. 18-cr-4066-LTS-KEM, 2018 WL 5723948, at *1 (N.D. Iowa Nov. 1, 2018) (adopting a magistrate judge's report and recommendation).

Second, the facts here show that Officer Smith did not stop, arrest, or seize defendant in any manner. Indeed, defendant flatly ignored Officer Smith's commands. It was Officer Martin, whose authority defendant does not challenge, who detained defendant. Thus, the constitutionality of defendant's detention turns on Officer Martin's conduct, not Officer Smith's conduct, rendering the issue of Officer Smith's authority to detain or arrest a non-parolee irrelevant to the analysis here.

Thus, the Court finds defendant has waived this issue by raising it for the first time in his objections to Judge Roberts' R&R. Alternatively, the Court overrules the objection on its merits.

### C.     *Officer Martin's Arrival on Scene*

Defendant asserts that Judge Roberts' finding that Officer Martin "arrived on scene as a result of Parole Officer Smith's call for service is erroneous." (Doc. 37, at 9, citing Judge Roberts' R&R at 4). Judge Roberts never made this factual finding. Rather, Judge Roberts recounted the facts as they occurred without drawing a conclusion about what "caused" Officer Martin to arrive. Judge Roberts noted that Officer Smith asked for backup. (Doc. 36, at 4). Judge Roberts stated that Officer Martin arrived as defendant was exiting the vehicle. (*Id.*). Judge Roberts noted the timing of Officer Martin's arrival in relation to Officer Smith's call for backup, but did not conclude that officer Martin arrived because of the call for backup. Specifically, Judge Roberts stated:

14

"Officer Martin arrived at the scene minutes after receiving the call that Officer Smith needed assistance at Motel 6." (*Id.*).

The testimony at the hearing shows that Judge Roberts' recitation of the timing of events is accurate. Officer Martin testified that he was dispatched to the Motel 6 because of a report of shots fired. (Doc. 38, at 41). He further testified that "At the scene, I was advised that another officer was needing help." (*Id.*). Officer Martin testified that he arrived at the location "minutes after the call was received." (*Id.*). Officer Martin testified that when he got out of his vehicle, defendant "was getting out of the front passenger seat of the vehicle that Officer Smith was at . . .." (*Id.*, at 43). On cross examination, Officer Martin clarified that he arrived at the motel at approximately the same time as Officer Smith, but at a different area of the motel. (*Id.*, at 52).

In any event, defendant has not made clear what legal significance defendant believes the fact of whether Officer Martin arrived as a result of a call from dispatch versus as a result of a call for an officer needing assistance has. Presumably, defendant's theory is that a call for assistance from another officer adds to the totality of facts Officer Martin had in assessing whether he had reasonable suspicion to stop defendant. To the extent that is defendant's argument, it is without merit. The fact remains from the testimony that before Officer Martin encountered defendant he knew: (1) he was dispatched to the Motel 6 to investigate a call of shots fired; and (2) another officer who arrived at about the same time but had first contact with defendant had called for backup.

Thus, the Court overrules defendant's objection on this issue.

### D. The Lighting in the Motel 6 Parking Lot

Defendant objects to Judge Roberts' finding "that the Motel 6 parking lot was 'a dark area illuminated only by a few parking lot lights.'" (Doc. 37, at 9). Judge Roberts did find that "Officer Smith was alone and in a dark area illuminated only by a few parking lot lights." (Doc. 36, at 3). Defendant argues that, in addition to the parking

15

lot lights, there were lights "on the bottom and top floors of the external sidewalk areas" of the motel. (Doc. 37, at 9-10). Defendant further argues that there was sufficient lighting and that the officers had flashlights. (*Id.*, at 10).

"Dark" is a relative term which can mean little or no light. So, too, the word "few" is a relative term. Judge Roberts did not purport to describe or quantify how dark it was, nor did he purport to specifically identify the number or location of lights illuminating the parking lot.

Officer Smith testified that "[i]t was fairly dark outside," acknowledging that although "there [we]re a couple of parking lot lights out there . . . it was fairly dark." (Doc. 38, at 14). He later noted that it was "dark out." (*Id.*, at 19). Both officers were using their flashlights. (*Id.*, at 31, 43-44). The Court has also reviewed the video from Officer Martin's body camera. Exhibit 2. The Court did note the other lights defendant referenced outside of the motel, but also noted that it was sufficiently dark that Officer Martin found it necessary to use his flashlight to be able to fully see defendant's hands and waist area.

Thus, the Court overrules defendant's objection and finds that for purposes of the constitutional analysis, despite the parking lot's illumination, it was sufficiently dark that officers had to use their flashlights to fully see.

### E.    Odor of Marijuana

Defendant objects to Judge Roberts' finding that there was an odor of marijuana emanating from the vehicle. (Doc. 37, at 10-12). Judge Roberts found that Officer Smith "noted the immediate smell of marijuana" when the driver rolled down his window. (Doc. 36, at 2). Judge Roberts also noted that Officer Smith had been trained in detecting the odor of marijuana. (*Id.*, at 2 n.3). The transcript supports this finding. (Doc. 38, at 17).

16

In his objections, defendant relies on the absence of corroborating evidence to call into question the credibility of Officer Smith's observation. Defendant argues that Officer Martin did not report smelling marijuana. (Doc. 37, at 10-11). Defendant also argues that the "record is absent as to any law enforcement based certification of Parole Officer Smith to detect the odor of marijuana, . . . Parole Officer Smith is not a trained narcotics officer, fails to identify the location or source of the odor and did not establish any training to detect a smell source." (*Id.*, at 11).

The Court finds there was sufficient evidence to support Judge Roberts' finding that Officer Smith smelled marijuana. First, Officer Smith so testified under oath and subject to cross examination. Second, Judge Roberts, who had the opportunity to observe Officer Smith testify, found him credible. (Doc. 36, at 2). The fact officers did find marijuana in the car later supports this credibility finding. Third, the fact that one officer reports smelling marijuana but another officer does not is not dispositive; there are a multitude of reasons why one officer could detect the odor and another did not, or why an officer may not mention smelling it even when he did. Notably, neither the prosecutor nor the defense attorney asked Officer Martin if he smelled marijuana when he testified at the suppression hearing; defense counsel only asked Officer Martin whether it appeared in Officer Martin's report. (Doc. 38, at 56). *See also United States v. Mayfield*, 678 Fed. App'x 437, 440 (8th Cir. 2017) (affirming district court's finding that officer smelled marijuana even though there was other evidence that was inconsistent with that finding); *United States v. Warren*, No. 18-CR-82-CJW-MAR, 2019 WL 202179, at *9 (N.D. Iowa Jan. 15, 2019) (finding credible officer's testimony that he smelled marijuana even though two other officers present did not). Fourth, there is no requirement that an officer be certified in the detection of marijuana; a human officer is not a canine officer in need of training and certification. The fact that Officer Martin may have had more training in this area (a presumption defendant makes without support in the record

17

because Officer Martin was never asked) does not mean that Officer Smith did not have sufficient training to recognize the odor of marijuana.

Thus, the Court overrules defendant's objection to this portion of Judge Roberts' R&R.

### F.    Whether Open Bottles of Beer Supported Reasonable Suspicion

Defendant objects to Judge Roberts' finding that Officer Smith's observation of the driver and defendant having open bottles of beer while seated in a parked but running car in a hotel parking lot established reasonable suspicion to support a *Terry* stop.  (Doc. 37, at 12-13).  Defendant cites Iowa statutes for the proposition that a driver must be on a highway or street to be in violation of the Iowa open container law.  (*Id.*, at 12). Defendant also argues that there was no authority to stop or detain defendant because there was no evidence he was ever the driver of the vehicle.  (*Id.*, at 12-13).

Judge Roberts found Officer Smith had authority to effectuate a *Terry* stop in part because Officer Smith detected the odor of marijuana and because Officer Smith observed the driver and defendant with open bottles of beer.  (Doc. 36, at 11-12).  As to the alcohol, Judge Roberts found that "Officer Smith has reasonable, articulable, and objective justification to believe that criminal activity was afoot in the form of operating a motor vehicle while intoxicated."  (*Id.*, at 13, n.5).  Judge Roberts found that Officer Smith had reasonable suspicion to stop the driver and defendant at least long enough to investigate this violation.  (*Id.*).  Defendant has not objected to this finding and the Court finds it supported by the record.  Judge Roberts also found Officer Smith had grounds to detain defendant to investigate the report of gunfire.  (*Id.*, at 14).  The Court agrees.

In any event, whether Officer Smith had reasonable suspicion sufficient to detain defendant is irrelevant.  Officer Smith never detained defendant.  Defendant defied Officer Smith's instructions to remain in the car and Officer Smith took no action to force defendant to comply with his order.  Officer Martin is the one who effectuated a *Terry*

stop on defendant. The Court finds the record supports the legality of this stop based on the totality of the circumstances. Officer Martin was dispatched to the motel in response to a shots-fired 9-1-1 call. The motel was associated with a large amount of criminal activity and transient people. It was relatively dark outside. Defendant and the driver were the only people outside in the back of the motel where the shots were reported. Officer Martin heard Officer Smith call for backup. When Officer Martin arrived at the car, he observed defendant walking away despite hearing that Officer Smith had instructed defendant to remain seated. Officer Martin then called several times to defendant to stop and defendant continued to attempt to enter his hotel room without any sign of compliance with Officer Martin's commands. All of this gave rise to reasonable suspicion that crime was afoot sufficient for Officer Martin to detain defendant long enough to investigate further. Whether Officer Smith smelled or did not smell marijuana, whether there were open containers of beer, and frankly whether Officer Smith had the authority to stop defendant are all irrelevant to this analysis.

Thus, the Court overrules defendant's objections to this part of Judge Roberts' R&R.

### G. *Firearms or Fireworks; That is the Question*

Defendant argues that Judge Roberts erred in finding that Officer Smith "did not know of and was not aware of the source potentially being fireworks." (Doc. 37, at 13, citing Judge Roberts' R&R at 3 & 16). Judge Roberts did not make this finding. At page 3 of his R&R, Judge Roberts noted: "Officer Smith then asked the two individuals about the shots fired in the area, and after first denying hearing anything, Defendant suggested that it might have been fireworks. (Doc. 36, at 3). At page 16 of his R&R, Judge Roberts stated:

> Officer Smith and Officer Martin had, at best, conflicting reports about the gunshots. Officer Smith did not mention any evidence of fireworks in the area as he walked up to Defendant and driver in their vehicle, and

19

Defendant was the only person who had told him that he thought the sound was fireworks. Officer Martin had only received information from an Uber driver that he thought the sounds were fireworks.

(Doc. 36, at 16). The Court finds Judge Roberts' factual findings to be accurate and supported by the record. Thus, to the extent defendant is objecting to Judge Roberts' factual findings regarding Officer Smith's knowledge of the report of fireworks, that objection is overruled.

Defendant's broader objection seems to be that the existence of conflicting information about the source of the sounds—whether it was firearms or fireworks—negates a reasonable suspicion of criminal activity sufficient to justify defendant's detention. Judge Roberts properly rejected this argument, concluding that "[i]t would be unreasonable to require Officer Smith and Officer Martin to accept these statements [about the sound coming from fireworks] without fear for their safety just because they received a report inconsistent with the 9-1-1 call. . . . At the very least, they were entitled to investigate more thoroughly before 'any threat or fear for officer safety' could be deemed 'unsubstantiated.'" (Doc. 36, at 16). The Court agrees. Officers had a 9-1-1 report of shots fired, at night, in a high crime area, where they encountered two males, one of whom was refusing to comply with officers' orders. That they also received speculation by an Uber driver and defendant that the sound may have been from fireworks was not enough to negate a reasonable suspicion that crime was afoot sufficient to allow the officers to detain defendant to investigate further the source of the sound.

Thus, the Court overrules defendant's objections to this portion of Judge Roberts' R&R.

## H. *Defendant's Admissions*

Defendant objects to Judge Roberts' R&R because defendant reads it as suggesting that defendant admitted possessing a firearm. (Doc. 37, at 14). Defendant characterizes

20

his statements as innocuous. (*Id.*). More generally, defendant asserts that the officers did not have lawful authority to legally detain defendant because they lacked reasonable suspicion or probable cause, and thus the officers should not have been searching the defendant at the time he made statements. (*Id.*).

After Officer Martin detained and handcuffed defendant, the following exchange took place:

Officer Martin: Why are you so adamant about getting in this room?

Defendant: Because I grabbed the wrong coat sir.

. . .

Officer Martin: Is this what you're worried about, what's in this? Chapstick?

Defendant: No, this pocket right here.

(Gov. Ex. 2 at 3:00-3:10; Id. at 4:05-4:13). Judge Roberts found that Officer Martin had the right to question defendant at this point because of a need for officer safety. (Doc. 36, at 18-19). Defendant does not object to this finding and the Court agrees with Judge Roberts' analysis and conclusion as to the lawfulness of the questions. In relation to the meaning of these statements, Judge Roberts wrote in his R&R: "Defendant was not coerced into saying he grabbed the wrong coat or that he had a firearm in his coat pocket. In fact, Defendant voluntarily admitted the presence of a firearm as Officer Martin was checking his other coat pocket." (*Id.*, at 20).

Defendant objects to Judge Roberts' interpretation of defendant's statements. Judge Roberts' interpretation of the statements are irrelevant. The government asserts the statements are incriminating and Judge Roberts' legal analysis was properly premised on determining whether the statements should be suppressed. It will ultimately be for the jury to decide whether the statements are incriminating and imply knowing possession of a firearm. If they are indeed innocuous, as defendant argues, then there is nothing incriminating to suppress.

21

As to defendant's more general argument that the officers lacked reasonable suspicion or probable cause to detain defendant, the Court finds that Judge Roberts' analysis was sound. The officers had reasonable suspicion to temporarily detain defendant to investigate criminal activity. The Court agrees that Officer Martin could question defendant about why he was so intent on disobeying officers' orders and entering the hotel room because officers had a legitimate concern for officer safety. Defendant's statements made in response to the officer's inquiry are admissible. The jury can determine whether those statements are incriminating or innocuous.

Thus, defendant's objection to this portion of Judge Roberts' R&R is overruled.

## V. CONCLUSION

For the reasons set forth above, defendant's Objections (Doc. 37) **are overruled**, the Report and Recommendation (Doc. 36) is **adopted without modification**, and defendant's Motion to Suppress (Doc. 27) is **denied**.

**IT IS SO ORDERED** this 10th day of December, 2020.

_____
C.J. Williams
United States District Judge
Northern District of Iowa